## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEJANDRO CORA, JR., | : | |
| | : | No. 1:11-cv-1067 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HANOVER BOROUGH POLICE | : | Hon. John E. Jones III |
| DEPARTMENT, RANDY | : | |
| WHITSON, CRAIG CULP, | : | |
| DOUGLAS RILEY, JOHN ROSER, | : | |
| CHARLES CLARK, and DWAYNE | : | |
| SMITH, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### December 12, 2011

## I.   INTRODUCTION

Before the Court is the Rule 12(b)(6) Motion to Dismiss (Doc. 18) of all

Defendants. The motion has been fully briefed and is thus ripe for disposition. For

the reasons articulated herein, the Court will grant Defendants' Motion with

respect to Counts II(B), II(C), II(D), II(E), III, and IV, with prejudice, and with

respect to Count I, without prejudice. Further, the Court will deny Defendants'

Motion to Dismiss with respect to Count II(A) and will order Plaintiff to file a

more definite statement consistent with Section IV(D) opinion.

## II.   PROCEDURAL HISTORY & STATEMENT OF FACTS

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiff's Complaint (Doc. 1) and accepted as true for purposes of resolving the instant Motion.

Alejandro Cora, Jr., ("Plaintiff"), is a Hispanic male citizen of the United States residing in York, Pennsylvania. (Doc. 1, ¶ 5). Defendant Borough of Hanover Police Department ("Hanover Police Department") is an agency of the Borough of Hanover, with a business office located in Hanover, Pennsylvania, and Defendant Randy Whitson ("Whitson") is a Caucasian male who at all times relevant herein served as the Chief of Police to the Hanover Police Department. (*Id.* ¶¶ 6-7). Defendants Craig Culp ("Culp"), Douglas Riley ("Riley"), John Roser ("Roser"), Charles Clark ("Clark"), and Dwayne Smith ("Smith"), are Caucasian males who at all times relevant herein served as police officers in the Hanover Police Department. (*Id.* ¶¶ 8-12).

On September 27, 2008, at approximately 9:07 p.m., the Hanover Police Department received a report from Travis McIntyre ("McIntyre") who stated that he was robbed of the night deposits, approximately $8,886.00, which he was depositing for Ryan's Restaurant of Hanover. (*Id.* ¶ 13). Ryan's Restaurant is located at 341 Eisenhower Drive in Hanover. (*Id.*) McIntyre reported the assailant

2

as a black male, 5'7" to 5'10", wearing a gray hooded sweatshirt with the hood up and a blue and white bandana covering his face, and possibly carrying a firearm. (*Id.* ¶ 14).

The Hanover Police Department also received information from Nichole Wuenschell ("Wuenschell") who indicated that on that same date at 9:10 p.m., she picked up Plaintiff from Texas Roadhouse, located at 179 Eisenhower Drive in Hanover. (*Id.* ¶ 17). Wuenschell further informed the police that Plaintiff wore a white polo shirt with blue stripes, a white, blue, and black bandana, jeans, and a shoulder bookbag, and that he informed her that he had received money from his mother to pay his delinquent expenses. (*Id.*). Ryan's Restaurant informed the police that they believed the robbery was committed by someone with knowledge of the company's deposit procedures. (*Id.* ¶ 23). Morris Carroll ("Carroll"), an employee at Ryan's Restaurant, told police that he knew Plaintiff, but that he had never discussed deposit procedures with Plaintiff. (*Id.* ¶¶ 21-22).

Defendant Riley concluded that because Plaintiff is Puerto Rican, he matched McIntyre's description of the subject as a "black male." (*Id.* ¶ 25). Defendants learned that the Plaintiff paid his rent for the months of September and October in cash on September 28, 2008 and, according to his landlord, this was not unusual practice. (*Id.* at ¶ 26-28). On October 7, 2008, Defendant Culp applied

for a warrant to search 223 Carlisle Street, Apartment Two, in Hanover, which they alleged was Plaintiff's residence, for the hooded sweatshirt, bandana, silver handgun, and any Ryan's Restaurant property. (*Id.* ¶ 29). According to Plaintiff, the affidavit of probable cause contained several false statements and omissions without which the warrant would not have been granted. (*Id.* ¶¶ 30-33).

On October 7, 2008, around 5:35 p.m., when Defendants Whitson, Culp, Smith, Roser, Clark, and Riley appeared at Apartment Two to execute their warrant, they encountered Plaintiff outside, who informed them that he lived in Apartment One, not Apartment Two. (*Id.* ¶¶ 35-37). Defendants seized Plaintiff and searched Apartment One without Plaintiff's consent; Defendants also seized Plaintiff's clothing, approximately $116 in cash, a cell phone, and other personal property. (*Id.* ¶¶ 38-40, 47). On October 8, 2008, Defendant Culp filed a complaint against Plaintiff charging him with robbery, theft by unlawful taking, receiving stolen property, false imprisonment, possession of marijuana, and possession of drug paraphernalia. (*Id.* ¶ 41). As a result of these charges, Plaintiff was incarcerated from October 8, 2008, through April 24, 2009. (*Id.* ¶ 43).

On February 4, 2009, the York County Court of Common Pleas granted Plaintiff's motion to suppress all evidence on a finding that the warrant was invalid and the subsequent search impermissible, (*Id.* ¶ 45, Ex. B), and on June 2,

2009, the court granted Plaintiff's writ of habeas corpus dismissing all charges

docketed against him in York County related to the robbery. (*Id.* ¶ 46, Ex. C).

Defendant's property was returned to him on December 21, 2010. (*Id.* ¶ 48). As a

result of these alleged violations of Plaintiff's rights, he has "suffered humiliation,

harassment, and disparagement." (*Id.* ¶ 49).

On June 2, 2010, Plaintiff filed the instant Complaint. (Doc. 1). On

September 1, 2011, the collective Defendants filed the instant Motion to Dismiss

and a Brief in Support of said motion. (Docs. 18, 19). On September 20, 2011,

Plaintiff filed a responsive Brief in Opposition, (Doc. 21), and on October 4, 2011,

Defendants filed their Reply Brief in further support of their Motion. (Doc. 23).

## III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept

all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*,

515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292

F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the

complaint, as well as "documents that are attached or submitted with the

complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a

6

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.   DISCUSSION

Defendants have moved to dismiss the Plaintiff's Complaint (Doc. 1) on several different grounds. Defendants first argue that the Complaint must be dismissed as having been untimely filed, a failure which they allege cannot be saved by the continuing violations doctrine. Second, the Defendants charge that all of Plaintiff's claims, including both the federal § 1983 claims and the state law claims, fail as a matter of law. Third, Defendants contend that if the claims are not time-barred or otherwise dismissed pursuant to Rule 12(b)(6), they are entitled to qualified immunity. We turn first to Defendants' contentions regarding the statutes of limitation on Plaintiff's claims.

### A.   Statute of Limitations on Plaintiff's § 1983 Claims

In his Complaint, Plaintiff has brought both § 1983 claims and related state law claims arising out of the October 7, 2008, search of Plaintiff's apartment and subsequent arrest, charge, and prosecution.[1] The two state law claims—for intentional infliction of emotional distress in Count IV and malicious abuse of

---

[1] We note parenthetically that this Court has jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367 as each of those claims stems from the alleged unconstitutional search and seizure that occurred on October 7 and 8, 2008, and thus shares a common nucleus of operative fact.

process in Count III—are subject to Pennsylvania's two-year statute of limitations for personal injuries. *See* 42 Pa.C.S. § 5524.

Calculation of the statute of limitations on Plaintiff's § 1983 claims raises a different question but ultimately produces the same result. In *Wilson v. Garcia*, 471 U.S. 261 (1985), the Supreme Court of the United States held that for purposes of calculating the statute of limitations in actions arising under 42 U.S.C. § 1983, such actions are best characterized as claims for personal injury. *Wilson*, 471 U.S. at 279. The Court in *Wilson* held that the state law statute of limitations for personal injury actions will apply in claims brought pursuant to § 1983. *Id.* The Third Circuit followed the Supreme Court's mandate in *Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993), where it applied the two-year limitations period for personal injury actions, pursuant to 42 Pa.C.S. § 5524, to claims brought under § 1983. *Kost*, 1 F.3d at 189-90. Thus, the applicable statute of limitations period, for both the § 1983 claims and the state law personal injury claims, is two years.

Although state law governs the length of particular statutes of limitation on § 1983 actions, federal law controls when that limitations period commences. In *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court explained that "[a]spects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles. Under those

principles, it is 'the standard rule that [accrual occurs] when the plaintiff has a

'complete and present cause of action,' that is, when 'the plaintiff can file suit and

obtain relief.'" *Id.* at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension*

*Trust Fund v. Ferbar Corp. of Ca.*, 522 U.S. 192, 201 (1997)). In other words, a

"section 1983 cause of action accrues when the plaintiff knew or should have

known of the injury upon which its action is based." *Sameric Corp. of Del. v.*

*Philadelphia*, 143 F.3d 582, 599 (3d Cir. 1998).

Courts in this Circuit have further clarified when particular § 1983 actions

accrue with regard to the some common § 1983 claims. In *Becker v. Godboldte*,

2011 U.S. Dist. LEXIS 55167, *12 (M.D. Pa.  May 24, 2011), the court relied on

*Wallace* in finding that a false arrest complaint was time-barred, explaining that

"the statute of limitations upon a § 1983 claim seeking damages for a false arrest

in violation of the Fourth Amendment, where the arrest is followed by criminal

proceedings, begins to run at the time the claimant becomes detained pursuant to

legal process." *Id.* at *12-13 (quoting *Wallace*, 549 U.S. at 397). The court further

explained that in the case of an alleged unreasonable search or seizure, "courts

will generally find that the plaintiff knew of the injury, and thus the cause of

action accrued, on the day the search and/or seizure took place." *Id.* at *13 (citing

*Raffensberger v. Moyer*, 2010 U.S. Dist. LEXIS 29938, *8-9 (E.D. Pa. Mar. 29, 2010)).

In his Complaint, Plaintiff alleges that the constitutional violations underlying the bulk of his § 1983 claims occurred on October 7 or, at the latest, October 8, 2008, when Defendants seized him, executed an eventually-invalidated search warrant on his residence, and charged him with several crimes, including robbery. Specifically, Plaintiff contends that he suffered a search and seizure violative of the Fourth, Fifth, and Fourteenth Amendments, discrimination in violation of the Fourteenth Amendment, false arrest, and intentional infliction of emotional distress. (Doc. 1, ¶¶ 69-85).The events in late October of 2008 are the sole violations pled by the Plaintiff to support his Complaint, except with respect to the malicious prosecution claim in Count II(A), and the *Monell* claim in Count I to the extent it relates to malicious prosecution.

As such, given that Plaintiff knew or should have known, at the latest, on October 8, 2008, that he had suffered an injury at the hands of the Defendants, the limitations period on his § 1983 claims and related state law personal injury claims began to run in October of 2008. Accordingly, the two-year limitations period on these claims, absent any exceptions to the statute of limitations, expired in October of 2010, nearly eight months prior to the filing of Plaintiff's Complaint.

Plaintiff's malicious prosecution claim[2] in Count II(A) presents a different issue and accordingly we address it separately. The statute of limitations on a malicious prosecution claim in Pennsylvania does not begin to run until the underlying action is terminated in the original defendant's favor. *See Becker*, 2011 U.S. Dist. LEXIS at *21. In the instant case, Plaintiff states in his Complaint that on June 2, 2009, the York County District Attorney's office granted Plaintiff's writ of habeas corpus, resulting in all charges arising out of the September 28, 2009, robbery being dismissed. As such, the underlying action was terminated in Plaintiff's favor on June 2, 2009, at which time the two-year state statute of limitations began to run on Plaintiff's malicious prosecution claim. Accordingly,

---

[2] We pause briefly to note that Plaintiff has brought both a count for malicious prosecution (Count II(A)) and one for malicious abuse of process (Count III). However, these two causes of action differ significantly in the facts that a plaintiff must plead with respect to timing of the alleged wrongful actions. That is, an "abuse of process occurs when a prosecution is *initiated* legitimately but *thereafter* used for a purpose other than that intended by law," and a malicious prosecution claim relates to the illegitimate initiation of a prosecution, that is, the process is illegitimate from the very beginning. *Mitchel v. Guzick*, 138 Fed Appx. 496 (emphasis added). In support of his malicious abuse of process count, Plaintiff charges that "Defendants used the criminal complaint in order to intimidate, harass, and discriminate against Plaintiff for personal reasons." (Doc. 1, ¶ 87). Plaintiff appears to confuse the malicious abuse of process and malicious prosecution causes of action. On the facts as pled by the Plaintiff, indicated by the just-quoted averment, a malicious abuse of process claim is not warranted because, according the to Plaintiff's allegations, nothing about the process was ever legitimate. While it is true that a plaintiff has every right to plead alternative causes of action, Plaintiff in the instant action gives no indication in his Complaint that such was his intent; as stated above, the face of the Complaint demonstrates a mere misunderstanding of the particular cause of action. As such, we proceed only on the theory of malicious prosecution and, as indicated in the order that follows, dismiss Plaintiff's Count III for Malicious Abuse of Process on the grounds that he has failed to state a claim for which relief can be granted.

the statute of limitations on this claim was set to expire on June 2, 2011. Plaintiff filed the instant Complaint at 11:32 p.m. on June 2, 2011; thus the Complaint as it relates to the malicious prosecution claim is timely filed.[3]

## B. Plaintiff's Continuing Violations Doctrine Argument

Plaintiff contends that if the claims arising out of the October 7 and 8, 2008, incidents are in fact time-barred, they are saved by the "continuing violations" doctrine. Plaintiff contends that because the property seized from Plaintiff during execution of the search warrant was not returned to him until December of 2010, the Defendants were engaged in a "continuing violation" of Plaintiff's rights, thus invoking the continuing violation exception to the statute of limitations and saving

---

[3] Defendant argues that pursuant to the local rules, specifically the Electronic Case Filing User Manual adopted by the United States District Court for the Middle District of Pennsylvania, the Plaintiff's filing was untimely. Specifically, Defendants rely on the printed docket sheet and electronic copy of the complaint found on the docket sheet, attached to their reply motion, which indicates a docketing date of June 3, 2011. However, after conferring with the Clerk's Office, we have confirmed that this was a typographical error on their part and that the Complaint was timely filed on June 2, 2011, at 11:32 p.m. This is indicated by the Notice of Electronic Filing accompanying the Complaint found in the generic filing docket to which all complaints, prior to being assigned their own docket number, are directed. As Defendants themselves point out, the User Manual provides that the "[a] document filed electronically is deemed filed on the date and time state on the Notice of Electronic Filing from the court." *See* United States District Court for the Middle District of Pennsylvania, User Manual, at pp. 9-10 (revised Apr. 21, 2006). The Notice of Electronic Filing sent to Plaintiff on June 2, 2011, notes that "The following transaction [the complaint] was entered by Thompson, Sandra on 6/2/2011 at 11:32 PM EDT and *filed on 6/2/11.*" (emphasis added). Accordingly, although filed literally at the eleventh hour, the Complaint was timely filed as to the malicious prosecution claim.

Plaintiff's claims from being time-barred. After a review of the established

precedent and directives in this Circuit with respect to this doctrine, we disagree.

The continuing violations doctrine is an equitable exception to the

sometimes harsh rule of the statute of limitations. While this doctrine has most

frequently been applied in the employment discrimination context, its application

in other areas is not precluded. *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir.

2001). In order to invoke the broad relief of this doctrine, a plaintiff must show

that the "defendant's conduct is part of a continuing practice" and that "the last act

evidencing the continuing practice falls within the limitations period." *Id.* at 292.

The plaintiff "must establish that the defendant's conduct is 'more than the

occurrence of isolated or sporadic acts.'" *Id.* (quoting *West v. Phila. Elec. Co.*, 45

F.3d 744, 755 (3d Cir. 1995)). Importantly, "[t]he focus of the continuing

violations doctrine is on *affirmative acts* of the defendants." *Cowell*, 263 F.3d at

293 (emphasis added). Importantly, the Supreme Court has held that a continuing

violation is not stated if all that appears from the complaint is that the plaintiff

continues to suffer from the ongoing effects of some past act of discrimination.

*See United Air Lines, Inc. v. Evans*, 441 U.S. 553, 558 (1977).

We believe that the facts as pled in Plaintiff's Complaint demonstrate that

this case is clearly distinguishable from one in which the continuous violations

doctrine should apply. As established above, the malicious prosecution claim arising on June 2, 2009 is within the statutory limitations period. Plaintiff thus contends that the malicious prosecution claim becoming ripe, coupled with the police failing to release Plaintiff's property to him until December 21, 2010, indicates that the Defendants have engaged in a clear pattern of continuing discrimination, tolling the limitations period through December of 2010. The question for our consideration thus becomes whether the ripening of the malicious prosecution claim and the failure to return Plaintiff's property until December of 2010 result in a clear pattern of affirmative, discriminatory behavior sufficient to invoke the continuing violations doctrine and toll the applicable statute of limitations. For the reasons that follow, we find that they do not.

As noted above, the focus of the continuing violations doctrine is whether the plaintiff has demonstrated a clear pattern of affirmative, discriminatory actions by the defendant(s) with at least one such act occurring within the limitations period. We find Plaintiff's complaint to be devoid of any complaint of discriminatory actions or inactions occurring on or after June 2, 2009. Indeed, Plaintiff does not complain of any actual, affirmative violations of his constitutional rights after June 9, 2009; his Complaint merely details the ongoing

effects and consequences of the Defendants' alleged initial actions. (*See* Doc. 1, ¶ 49).

We note that the Third Circuit has spoken on this issue in an analogous and instructive, albeit nonprecedential, opinion, where the court explained that if the continued harm is merely a consequence of the initial alleged violation, as opposed to an independent violation in and of itself, the continuing violations doctrine is inapplicable. *See McNamara v. Wenner*, 67 Fed. Appx. 139, 143-45 (3d Cir. 2003). The Circuit further explained that in "cases concerning deprivation of one's property," the violation of one's rights "accrues when the property is seized," and thus the retention of that property is not a continued and renewed violation. *Id.* Although, to be clear, we are not considering this case improperly as precedent, we find the Circuit's reasoning to be sound and logical, and agree that on the instant facts, the alleged "continued violation" pled by the Plaintiff is nothing more than a residual consequence of the alleged initial violation. As such, it does not amount to an independent violation of Plaintiff's rights.

While Plaintiff failed to raise any such allegations in his Complaint, in his brief in opposition to Defendants' Motion to Dismiss, Plaintiff alleges that on July 7, 2009, the Defendants "informed the Judge of their continued investigation and pursuit of criminal charges against plaintiff" and that said activity continued until

the investigation of Plaintiff was formally closed on December 21, 2010, when the property initially seized in October of 2008 was returned. While as noted these facts are not pled in Plaintiff's Complaint, even assuming the existence of these facts, Plaintiff fails to indicate in what manner a continued investigation, in and of itself, resulted in any additional violation of his constitutional rights. We thus find this argument to be without merit.

Accordingly, we find that Plaintiff has failed to plead that any act of the Defendants, collectively or individually, occurred after June 2, 2009, that is, within the two-year limitations period preceding the filing of his Complaint, and as such, the facts as pled in his Complaint do not bring the alleged violations of October 2008 within the reach of the continuing violation doctrine. As a result, we find that the continuing violations doctrine is inapplicable to the instant action and thus does not save Plaintiff's complaint, other than the timely malicious prosecution claim in Count II(A) and the Count I *Monell* claim inasmuch as it relates to malicious prosecution, from being dismissed as time-barred.

## C.    Plaintiff's Malicious Prosecution Claim

Plaintiff has brought suit under § 1983 alleging that Defendants collectively have violated his constitutional rights by initiating a criminal prosecution against him on October 8, 2008, "for the purpose of harassing, intimidating, or racial

profiling Plaintiff rather than for the purpose of bringing Plaintiff to justice."
(Doc. 19, ¶ 70). We find that, accepting all facts in Plaintiff's Complaint as true as
we are directed to do on a motion to dismiss, the Plaintiff has adequately pled a
claim for malicious prosecution.

The Third Circuit has established that the United States Constitution
recognizes and supports a claim for malicious prosecution. *See McKenna v. City of
Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). Malicious prosecution is a common-law
tort that occurs where a criminal proceeding is initiated against a defendant
without probable cause to support that proceeding. *See Donahue v. Gavin*, 280
F.3d 371, 377-78 (3d Cir. 2002). Pursuant to the Supreme Court's decision in
*Albright v. Oliver*, 510 U.S. 266 (1994), the common-law requirements have been
amplified for purposes of the § 1983 cause of action; that is, the Court held that
elements of the common-law tort, in and of themselves, are insufficient to
establish a constitutional violation. *Id.* at 272-74.

Thus, to prevail on a malicious prosecution claim under § 1983, a plaintiff
must prove the following five elements: "(1) the defendants initiated a criminal
proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the
proceeding was initiated without probable cause; (4) the defendants acted
maliciously or for a purpose other than bringing the plaintiff to justice; *and* (5) the

18

plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a result of a criminal proceeding." *McKenna*, 582 F.3d at 461 (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

With respect to the first and second elements, that the defendants initiated a criminal proceeding and that the criminal proceeding was terminated in the Plaintiff's favor, we believe that Plaintiff has pled sufficient facts to support both of these elements. According to Plaintiff, on October 7, 2008, Defendants, collectively, executed an invalid search warrant on his apartment and seized him, and that on October 8, 2008, Defendant Culp, under the direction of Defendant Whitson, filed a written criminal complaint against Plaintiff charging him with, inter alia, robbery in violation of 18 Pa.C.S. § 3701(a)(1)(iv). (Doc. 1, ¶¶ 30-42). Finally, Plaintiff's Complaint contains averments, and an attached court order in support thereof, that the charges were dismissed against him on June 2, 2009. As such, Plaintiff has pled sufficient facts supporting that a criminal proceeding was instituted against him and adjudicated in his favor, thus satisfying the first two elements of his malicious prosecution claim.

As to the third element, that the defendant acted with malice, or for a purpose other than bringing the plaintiff to justice, Plaintiff has pled sufficient facts, presumed to be true, to meet this element. In the context of a malicious

prosecution cause of action, malice has been defined as "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993). Further, the Third Circuit has held that "[m]alice may be inferred from the absence of probable cause." *Id.*

Plaintiff alleges that the Defendants "knowingly and deliberately with reckless disregard for the truth" made false statements and allegations in applying for a search warrant, and targeted the Plaintiff, solely because he is of Puerto Rican descent. (Doc. 1, ¶ 31, 51 70(d)). Specifically, Plaintiff alleges that Defendants acted for the purpose of "harassing, intimidating, or racial profiling" of the Plaintiff rather than for the purpose of bringing him to justice. (*Id.* ¶ 70(d)). Elsewhere in his Complaint, Plaintiff contends that this is evidenced by the fact that Plaintiff was treated differently than Morris Carroll, who was not investigated despite the Defendants receiving information that he was an inside employee involved in the robbery, and who was not in Plaintiff's protected class. (*Id.* ¶ 80-82).

With respect to the fourth element, we find that Plaintiff has also pled sufficient facts demonstrating "a deprivation of liberty consistent with the concept of seizure as a result of a criminal proceeding." *McKenna*, 582 F.3d at 461.

Plaintiff was arrested and charged on October 8, 2008. (Doc. 1, ¶¶ 41-43). Plaintiff was incarcerated on these charges for 199 days, from October 8, 2008, until a county court judge ordered his release on April 24, 2009. (Doc. 1, ¶ 43). Plaintiff has further averred that as a result of this deprivation, he has "suffered discomfort, damage to his health, loss of time and deprivation of the society, stress, worry, lack of sleep, loss of employment, the inability to gain re-employment, and loss of property." (Doc. 1, ¶ 44). Finally, Plaintiff suffered a deprivation of his personal property, including $116.00 in cash, clothing, a cell phone, and other personal property, from October of 2008 until December of 2010. (Doc. 1, ¶ 47). As a result, we find that Plaintiff has satisfied the deprivation of liberty element.

The final element of the claim, whether the defendant lacked probable cause to initiate the criminal proceeding, requires more extensive analysis. The Third Circuit has explained that:

> Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense. Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting.

*Lippay*, 996 F.2d at 1502.

Plaintiff contends that Defendants acted with only two true facts to support their warrant application: that Plaintiff paid two months rent in cash on the day

after the robbery, (Doc. 1, ¶ 27), and that Plaintiff's friend informed Defendants

that on the night of the robbery, she picked Plaintiff up at a restaurant on the same

road as the scene of the crime and stated that he had recently received money from

his mother to pay his delinquent expenses. (Doc. 1, ¶ 19-20). This friend also

informed the Defendants that Plaintiff was friendly with Morris Carroll, an

employee who works in the kitchen at Ryan's Restaurant. (Doc. 1, ¶ 21).

Plaintiff contends that any reasonable inference of guilt that the Defendants

could have drawn from this evidence is cleared by other facts that the Defendants

were aware of but neglected to include in their affidavit. Specifically, Plaintiff

contends that the Defendants neglected the statement of Plaintiff's landlord, that it

was not unusual for Plaintiff to pay rent late, as he always did so, and always paid

in cash. (Doc. 1, ¶ 28). Plaintiff states that the Defendants did not include in their

affidavit that the robbery suspect is seen in video footage as early as 8:13 p.m. and

that Plaintiff did not clock out from his place of employment until 8:19 p.m. (Doc.

1, ¶ 30(a)). Finally, Plaintiff contends that the Defendants failed to consider that

Ryan's Restaurant's loss prevention informed the Defendants that the robbery

appeared to be committed by an insider and that they neglected to investigate that

possibility or other reasonable leads. (Doc. 1, ¶ 23-24).

Further, Plaintiff avers that the victim informed the Defendants that the suspect was black, and notwithstanding that information, Defendants obtained a search warrant for Plaintiff's residence, even though Plaintiff is a light-skinned individual of Puerto Rican descent. (Doc. 1, ¶ 25). According to Plaintiff, the Defendants were informed that the suspect was a black male between 5'7" and 5'10" in height, wearing a gray hooded sweatshirt and a blue and white bandana. (Doc. 1, ¶ 14). Plaintiff's friend stated that on the night of the robbery, Plaintiff was wearing a white, blue, and black bandana, a white and blue striped polo shirt, and a book bag. (Doc. 1, ¶ 17). According to the Complaint, Plaintiff is a light complexion Hispanic male who is 5'11" tall, (Doc. 1, ¶ 16), and thus did not at all match the description of the suspect given to the Defendants. (Doc. 1, ¶ 30). Finally, Plaintiff avers that the victim, McIntyre, could not identify who had stolen the money from him. (Doc. 1, ¶ 16).

Plaintiff avers that the criminal charges were filed without probable cause and solely because he is a member of a protected class. (Doc. 1, ¶¶ 25, 51, 70). Plaintiff contends that Defendants were aware of the lack of probable cause, but intentionally fabricated statements and omitted material information in order to convince a magistrate judge that probable cause existed. (Doc. 1, ¶ 30).[4] Finally,

---

[4] Specifically, the Plaintiff contends that the Defendants: (1) alleged that Plaintiff was a dark complected Puerto Rican male fitting the description given by the victim, when in fact Plaintiff is

Plaintiff contends that the Defendants failed to undertake a diligent investigation and focused the investigation solely on him when, according to the Plaintiff, more reasonable and supported leads existed.[5]

Further, Plaintiff contends that the actions of both the York County Common Pleas judge presiding over his case and the district attorney demonstrate that even they were without belief that probable cause existed for the arrest, investigation, and prosecution. (Doc. 1, ¶ 45). Specifically, Plaintiff contends that the search warrant executed on October 7, 2008, was dismissed by a York County Court of Common Pleas judge who found that the warrant and subsequent search were invalid, suppressing all evidence received thereby. (Doc. 1, ¶ 45). Plaintiff further avers that all charges were dismissed, with the concurrence of the York County district attorney's office, in June of 2009, and in support thereof has attached the writ of habeas corpus dismissing all charges. (Doc. 1, ¶ 46, Ex. C).

---

a light-skinned Puerto Rican male and the victim described a black male; (2) intentionally omitted that the suspect in the robbery was initially viewed in surveillance footage at 8:13 p.m., when Plaintiff was still at work; and (3) averred that Plaintiff gave $1,150 in cash to his landlord to pay his delinquent rent, while intentionally omitting that Plaintiff always paid his rent late and in cash, and that he informed friends that the cash for the payment was mailed to him by his mother. (Doc. 1, ¶ 30).

[5] While we note that the failure of the Defendants to conduct the best investigation possible does not necessarily preclude a finding of probable cause in and of itself, *see Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 786 (3d Cir. 2000), we are not prevented from considering it as one factor of many under the probable cause "totality of the circumstances" analysis.

We believe that Plaintiff has sufficiently pled facts which, if true, plausibly support this element and thus survive the motion to dismiss stage of this action. Whether or not probable cause actually existed is a question more appropriately suited for resolution either at the summary judgment stage or by a jury, after the Plaintiff has had an opportunity to engage in discovery and acquire evidence to support his factual allegations. At this point, for purposes of a Rule 12(b)(6) motion to dismiss, we find that Plaintiff has pled sufficient facts to support his claim for malicious prosecution.

We note that the Defendants do not address the merits of the Plaintiff's cause of action or contend that Plaintiff has pled insufficient facts to support the individual elements of the claim. The only defense asserted by the Defendants is that Plaintiff's malicious prosecution claim must fail as a matter of law because "Plaintiff's use of the criminal justice system to his advantage shows that he got all the process that was due to him," (Doc. 19, p. 20). We disagree, and candidly, believe that the Defendants' contentions in this regard are insincere, illogical, and, taken in a larger context, mean that it would be virtually impossible for anyone to bring a malicious prosecution claim.

The purpose of the malicious prosecution action brought pursuant to § 1983 is to remedy the wrongful use of the legal process where the prosecution has been

illegitimate from its inception. *McKenna*, 582 F.3d at 461. The necessity of a malicious prosecution action would be obviated should any court decide that a particular defendant has received all process that he is, and has ever been, due by having the opportunity to address and defend the criminal charges against him in court. Indeed, a critical element of a malicious prosecution claim is that criminal proceedings were actually initiated against an individual and ultimately resulted in a disposition of the charges in that individual's favor. *Id.* If we were to find that the very occurrence of those proceedings alone cured any constitutional violation, in essence, we would be abolishing the malicious prosecution cause of action. We thus reject the Defendants' theory that the presence of an element of this cause of action should serve as a defense to the same.

Accordingly, taking all facts as pled in Plaintiff's Complaint to be true, we find that Plaintiff has sufficiently pled a claim for malicious prosecution, and as such, Defendants' Motion to Dismiss with respect to that claim is denied.

### D. Plaintiff's Claims Against the Individual Defendants

Defendants Whitson, Culp, Smith, Roser, Clark, and Riley argue in their motion to dismiss that even if Plaintiff's constitutional rights were violated, these Defendants should be dismissed from the instant action based on the doctrine of qualified immunity. Plaintiff's Complaint lists the § 1983 malicious prosecution

defendants as Whitson, Culp, Smith, Roser, and Clark, but several of the averments within that count refer to actions of Defendant Riley as well. (*See* Doc. 1, ¶ 70, 70(d)). Accordingly, we assume that the § 1983 claim for malicious prosecution is brought against all of the individual Defendants, including Defendants Whitson, Culp, Smith, Roser, Clark, and Riley.

The doctrine of qualified immunity shields officials acting and sued in their individual capacities, *see Brandon v. Holt*, 469 U.S. 464, 471-73 (1985). A state or municipal actor "sued in his individual capacity enjoys qualified immunity if his conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) (superseded on other grounds in *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d. Cir. 2009)). The Third Circuit has succinctly set forth the standard for analyzing a qualified immunity claim:

> Determining whether a state actor is entitled to the affirmative defense of qualified immunity generally involves two inquiries: (1) do the facts alleged show that a state actor violated a constitutional right, and (2) was the constitutional right clearly established so that a reasonable person would know that the conduct was unlawful? A right is clearly established if there is "sufficient precedent at the time of the action . . . to put [the] defendant on notice that his or her conduct is constitutionally prohibited. Courts are accorded 'discretion in deciding which of the two prongs of the

> qualified immunity analysis should be address first in
> light of the circumstances in the particular case at hand."

*Wilson v. Zielke*, 382 Fed. Appx. 151, 152 (3d. Cir. Feb. 9, 2010) (quoting

*Pearson v. Callahan*, 555 U.S. 223 (2009); *McKee v. Hart*, 436 F.3d 165, 171 (3d

Cir. 2006)) (internal citations omitted).

At this juncture, we struggle to entertain a qualified immunity analysis on

the facts as pled in Plaintiff's Complaint. The Complaint refers interchangeably to

all of the Defendants without much designation or specific reference to the

individual defendants. While Plaintiff has alleged sufficient facts to support his

malicious prosecution claim, charging that all Defendants were involved in the

process of the prosecution at some point and that the prosecution was maliciously

pursued solely because of his race, Plaintiff has not pled sufficient facts with

respect to what each Defendant knew or did not know to demonstrate whether the

individual Defendants are entitled to qualified immunity. As a result, it is

impossible at this point for this Court to engage in a meaningful qualified

immunity analysis with respect to each of the individual Defendants.

In *Thomas v. Independence Township*, 463 F.3d 285 (3d Cir. 2006), the

Third Circuit addressed a similar issue where the parties squared off regarding the

competing requirements of federal notice pleading and the qualified immunity

defense. *Id.* at 289. There, the court held that the Circuit does not require a

plaintiff to anticipate a qualified immunity defense and, accordingly, that the

failure to plead with specificity the violation of a clearly established right by

specific defendants is not, in itself, enough to support a motion to dismiss on

qualified immunity grounds. *Id.* at 289-90. The Circuit directed that the

"appropriate remedy" in such a circumstance is to grant leave to file a more

definite statement pursuant to Federal Rule 12(e). *Id.* at 289. The court explained:

> Even when a defendant does not formally move for a
> more definite statement, the district court has the
> discretion to demand more specific factual allegations in
> order to protect the substance of the qualified immunity
> defense and avoid subjecting government officials who
> may be immune from suit to needless discovery and the
> other burdens of litigation.

*Id.* at 289.

We find the guidance of the Circuit in *Thomas* to be applicable to the case

*sub judice*. Without more definite statements of fact from the Plaintiff, we are

unable to accurately rule on the individual Defendant's claims of qualified

immunity. As established above, the Plaintiff has pled sufficient facts against the

Defendants to withstand a Rule 12(b)(6) motion to dismiss the malicious

prosecution claim, on its merits, but the Complaint does not put sufficient facts

before this Court to competently rule on a qualified immunity defense with respect

to each individual Defendant. As a result, pursuant to Federal Rule 12(e) and the

Third Circuit's decision in *Thomas*, we shall direct the Plaintiff to file a more definite statement in order to afford this Court the opportunity to adequately address the individual Defendants' claims of qualified immunity.

### E.   Plaintiff's Monell Claims in Counts I(A) and I(B)

Having determined that all counts of Plaintiff's Complaint other than the malicious prosecution claim are time-barred, we review the Defendants' *Monell* challenge in light of that claim only. In *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression. *Id.* at 691. A "policy" is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).

As stated above, in order to state a claim for municipal liability under § 1983, the plaintiff must do more than simply formulaically recite the elements of a claim. A plaintiff claiming a constitutional violation against a municipality under

§ 1983 must demonstrate a "showing" of entitlement to relief, more than a mere "blanket assertion" or conclusory allegation. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Plaintiffs must plead facts which demonstrate that Defendants are responsible either for enacting, implementing, or widespreadly engaging in a practice which constitutes or causes a constitutional violation. *See id.* We have previously held that a complaint that merely states the standard for municipal liability under § 1983, without more, is insufficient to survive a *Monell* challenge. *See Heilman v. T.W. Ponessa & Assocs.*, 2008 U.S. Dist. LEXIS 6875, *42-43 (M.D. Pa. 2008) (Jones, J.).

In his Complaint, Plaintiff pleads that Defendant Whitson, as the most superior officer of the Hanover Borough Police Department, approved the warrant affidavit which contained allegedly false statements and omitted material information with respect to Plaintiff. (Doc. 1, ¶ 29, 31). Plaintiff does not otherwise allege that, through policy, custom, or practice, the municipal Defendants, with knowledge of the violation of Plaintiff's constitutional rights, affirmed or encouraged such practices. Plaintiff merely recites the elements for municipal liability under § 1983, that is that the Defendants failed to, or insufficiently and inadequately, trained and supervised their employees (Doc. 1, ¶ 56-58) and that the Defendants knew or should have known that such training was

31

necessary, (Doc. 1, ¶ 60). Plaintiff pleads no facts to support these otherwise conclusory allegations.

Plaintiff's claim for "deliberate indifference in policy and custom" suffers from the same shortcomings. Plaintiff contends only that the municipal defendants "at all times relevant had a policy and/or custom . . . which shielded officers from complaints of citizens" (Doc. 1, ¶ 65), "had a policy and/or custom of acquiescing in unconstitutional practices of their officers in prior circumstances which allowed the constitutional abuses to occur," (Doc. 1, ¶ 66), and "had a policy and/or custom of inadequate response to an investigation of citizen complaints and ineffective and inadequate discipline of offending officers." (Doc. 1, ¶ 67).

Again, Plaintiff does nothing more than insert the Defendants' names into a formulaic recitation of the elements of a claim for municipal liability under § 1983, which, as has been long-established, is insufficient for purposes of a motion to dismiss. *See Phillips*, 515 F.3d at 233. These statements are conclusory in nature and Plaintiff fails to offer any facts whatsoever supporting a finding of municipal liability under § 1983. Accordingly, Counts I(A) and (B) are dismissed, with leave to amend.[6]

---

[6] Based upon *Monell* and its progeny, and because we are elsewhere allowing Plaintiff to file a more definite statement relative to the qualified immunity issue, we will permit Plaintiff the opportunity to amend his Complaint to the extent that there are facts which, if pled and proved at trial, demonstrate that Plaintiff's injuries were the result of a "custom" or "policy" of

## V.   CONCLUSION

To reiterate, and for all of the reasons stated herein, this Court finds that the

claims for Fourth Amendment seizure (Count II(B)), Fifth and Fourteenth

Amendment deprivations (Count II(C)), Fourteenth Amendment Equal Protection

violations (Count II(D), False Arrest (Count II(E)), and intentional infliction of

emotional distress (Count IV), are time-barred pursuant to the two-year statute of

limitations applicable to § 1983 and state law personal injury claims. The claim for

Malicious Abuse of Process (Count III) is dismissed for failure to state a claim for

which relief can be granted.

However, as explained in detail above, because the statute of limitations on

Plaintiff's malicious prosecution claim in Count II(A) did not begin to run until

the date that the underlying criminal proceeding terminated in his favor, thus

beginning to run at a later date than the statute on his other claims, Plaintiff will be

permitted to proceed to discovery on the malicious prosecution claim.

With respect to the remaining claim for malicious prosecution, we hold that,

as to the municipal Defendants, Plaintiff's *Monell* claim is dismissed, without

prejudice, for failure to properly plead a claim for municipal liability, and as to the

individual Defendants, Plaintiff is directed to file a more definite statement such

_____

discrimination.

that this Court can properly address the individual Defendants' qualified immunity defenses.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.   The Defendants' Motion to Dismiss is **GRANTED** in part, as follows:

   a.   Count I, in its entirety, is dismissed with leave to amend; and

   b.   Counts II(B), II(C), II(D), II(E), III, and IV, are dismissed without leave to amend.

2.   Plaintiff is **GRANTED** leave to amend Count I of the Complaint to the extent there are facts which, if true, demonstrate a claim for municipal liability in accordance the *Monell* progeny and this opinion, and such amended Complaint must be filed within twenty (20) days of this Order.

3.   Plaintiff is **DIRECTED** to file a more definite statement with respect to Count II(A) pursuant to Rule 12(e) and the Circuit's decision in *Thomas* within twenty (20) days of this Order.

/s John E. Jones III<br>
John E. Jones, III<br>
United States District Judge